UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| AutoAlert, LLC | CASE NO. SACV 12-1661-JLS (JPRx) |
|---|---|
| Plaintiff, | |
| vs. | **ORDER GRANTING AUTOBASE'S MOTION FOR SUMMARY JUDGMENT (Doc. 109)** |
| Dominion Dealer Solutions, LLC; Autobase, Inc.; and 110 Reynolds, LLC, | |
| Defendants | |

## I. INTRODUCTION

Before the Court is a Motion for Summary Judgment of Invalidity under 35 U.S.C. § 101 filed by Defendant Autobase, Inc. (Doc. 109.) Plaintiff AutoAlert, Inc. opposed, and Autobase replied. (Docs. 118, 121.) Having read and considered the papers, heard oral argument and taken the matter under submission, the Court GRANTS the Motion.

## II. BACKGROUND

On October 1, 2012, AutoAlert filed a Complaint in this Court against Defendants Dominion Dealer Solutions, LLC, Autobase, Inc. and 110 Reynolds, LLC for patent infringement. (Doc. 1.) On April 23, 2013, AutoAlert filed a First Amended Complaint. (FAC, Doc. 35.) AutoAlert claims Defendants have infringed and continue to infringe five of its patents. (Id.) All five patents describe a "[s]ystem and method for assessing and managing financial transactions." The abstracts, which are identical, read:

> A financial terms alert generation system comprises an information retrieval module, a financial terms comparison module, and an alert transmission module. The information retrieval module is configured to retrieve financing information, customer information, and product information from one or more sources accessible on a network. The financial terms comparison module is configured to compare a customer's current financial arrangement to a potential new financial arrangement to determine whether the customer is able to enter into a new financial arrangement on terms favorable to the customer. The alert transmission module is configured to transmit an alert to a dealer in cases in which the financial terms comparison module determines that a customer is able to enter into a new financial arrangement on terms favorable to the customer. Such alerts identify the customer and the favorable financial terms.

The Court previously denied 110 Reynolds' Motion for Summary Judgment, in which it contended that AutoAlert's asserted claims are indefinite under 35 U.S.C. § 112. (Doc. 138.) The Court then issued its Order on Claim Construction. (Doc. 139.) On

October 31, 2014, Autobase filed the instant Motion for Summary Judgment, in which it argues that all asserted claims[1] are invalid because they are drawn to unpatentable subject matter under 35 U.S.C. § 101.  (Mem., Doc. 109-1, at 1.)

## III. LEGAL STANDARD

In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Summary judgment is proper "if the [moving party] shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56.  A factual issue is "genuine" when there is sufficient evidence such that a reasonable trier of fact could resolve the issue in the non-movant's favor, and an issue is "material" when its resolution might affect the outcome of the suit under the governing law.  *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and quotation marks omitted).  The burden then shifts to the non-moving party to "cit[e] to particular parts of materials in the record" supporting its assertion that a fact is "genuinely disputed."  Fed. R. Civ. P. 56(c)(1); *see also In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) ("non-moving party must come forth

---

[1] The asserted claims are: claims 1, 3, 4, 6 and 7 of U.S. Patent No. 8,396,791 ("the '791 Patent"); claims 1, 3, 4, 7, 9-11 and 15 of U.S. Patent No. 8,095,461 ("the '461 Patent"); claims 1-3, 6, 8, 10-13, 15-17, 19 and 20 of U.S. Patent 7,827,099 ("the '099 Patent"); claims 1, 3-5, 7-9, 11-13, 15 and 16 of U.S. Patent No. 8,005,752 ("the '752 Patent"); and claims 1, 3, 4, 10, 12-14, 16 and 19 of U.S. Patent No. 8,086,529 ("the '529 Patent").

1 with evidence from which a jury could reasonably render a verdict in the non-moving
2 party's favor").

## IV. DISCUSSION

As noted above, Autobase argues that AutoAlert's claims are invalid under 35 U.S.C. § 101 for claiming ineligible subject matter.

Section 101 of the Patent Act defines the subject matter that is eligible for patent protection: "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefore, subject to the conditions and requirements of this title." 35 U.S.C. § 101. This section, however, contains important implicit exceptions. "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). The concern that drives these exceptions is preemption; laws of nature, natural phenomena, and abstract ideas are "the basic tools of scientific and technological work," and granting patents based on these exceptions might impede innovation more than it would promote it. Yet, to some extent "all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 134 S. Ct. at 2354 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012)). "Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept." *Alice,* 134 S. Ct. at 2354 (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)).

The Supreme Court has analyzed Section 101 by distinguishing "between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention." *Alice*, 134 S. Ct. at 2354 (internal quotations and citations omitted). In *Mayo*, the Supreme Court set forth a two-step framework for distinguishing between these two types of

patents. "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, [w]hat else is there in the claims before us?" *Alice*, 134 S. Ct. at 2355 (alteration in original) (quoting *Mayo*, 132 S. Ct. at 1296-97). The second step is essentially "a search for an 'inventive concept' – *i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 134 S. Ct. at 2355 (alteration in original) (quoting *Mayo*, 132 S. Ct. at 1294). The elements of each claim must therefore be considered both individually and "as an ordered combination." *Mayo*, 132 S. Ct. at 1298.

### A. Ineligible Subject Matter
#### 1. Abstract Idea

As noted above, the first step of the *Mayo* test requires the Court to determine whether the claims at issue are directed to a "patent-ineligible concept." 132 S. Ct. at 1296-97.

Autobase argues the claims at issue are directed to the abstract, and therefore patent-ineligible, concept of providing vehicle sales opportunities based on loan or lease payments. (Mot. at 11-12.) AutoAlert disputes this and argues that the claims are instead drawn to the concept of providing "specific implementations of computer systems that automatically provide vehicle sales opportunities by iteratively retrieving information necessary to identify such opportunities as soon as they are available." (Opp. at 19.)

Both sides agree Claim 1 of the '461 Patent is illustrative. (Opp. at 21; Reply at 11, 13.) It recites:

> A method comprising:
>   by a computer system comprising computer hardware:
>     automatically retrieving at least a portion of customer information, first financial terms that a customer has for a first vehicle, and first vehicle information;

automatically retrieving at least a portion of second vehicle information for a second vehicle and second financial terms available to the customer for the second vehicle;

receiving a configuration request for replacing the first vehicle of the customer with a different vehicle;

in response to the configuration request, retrieving in real-time changed information since past changed information associated with at least one of the customer information, the first financial terms that the customer has for the first vehicle, the first vehicle information, the second vehicle information, or the second financial terms available to the customer for the second vehicle;

determining, by the computer system, whether the changed retrieved information may affect whether it is favorable for the customer to replace a first vehicle and first financial terms with a second vehicle and second financial terms by at least:

    automatically calculating one or more new payments based on an estimated equity value of the first vehicle derived from the first financial terms, and, based on the second financial terms; and

    automatically determining if the one or more new payments satisfy at least a condition based at least in part on the first financial terms and the second financial terms, wherein the determination comprises calculating a difference between the one or more new payments and an existing periodic payment for the first vehicle, and determining whether the difference is less than or equal to a preset acceptable threshold value;

automatically generating a message if it is determined that the changed retrieved information may affect whether it is favorable for the customer to replace the first vehicle and first financial terms with the second vehicle and second financial terms, and not generating the message if it is determined that the changed retrieved information may not affect whether it is favorable for the customer to replace the first vehicle and first financial terms with the second vehicle and second financial terms; and

6

transmitting the message to a dealer.

('461 Patent, col. 24:39-25:15.)[2]

The above claim, in essence, consists of three processes: (1) gathering data; (2) performing calculations on that data; and (3) sending messages to the user. None of these steps, considered in isolation, is patentable. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011) ("Mere data-gathering steps cannot make an otherwise nonstatutory claim statutory."); *In re Warmerdam*, 33 F.3d 1354, 1360 (Fed. Cir. 1994) (""[T]he manipulation of basic mathematical constructs [is] the paradigmatic 'abstract idea"); *Digitech Image Technologies, LLC v. Electronics for Imaging*, Inc., 758 F.3d 1344, 1351 (Fed. Cir. 2014) ("Without additional limitations, a process that employs mathematical algorithms to manipulate existing information to generate additional information is not patent eligible.").

AutoAlert argues, however, that these elements are not abstract when viewed as a whole, rather than in isolated components. (Opp. at 18.) Analogous precedents do not support its position. For instance, in *Bilski*, the Supreme Court considered a "method for hedging against the financial risk of price fluctuations." *Bilski v. Kappos*, 561 U.S. 593 (2010). The claims recited a series of steps for hedging risk, including: (1) initiating a series of financial transactions between providers and consumers of a commodity; (2) identifying market participants that have a counterrisk for the same commodity; and (3) initiating a series of transactions between those market participants and the commodity provider to balance the risk position of the first series of consumer transactions. *Id*. at 599. The Supreme Court unanimously found the claims abstract because they were drawn to "the basic concept of hedging, or protecting against risk," and "hedging is a fundamental economic practice long prevalent in our system of commerce and taught in any

---

[2] The Court will presently discuss the patents in suit using Claim 1 of the '461 as an illustrative claim, a proposition with which AutoAlert agrees. (*See* Opp. at 21-22.)

1  introductory finance class.'" *Id*. at 609.  The concept of hedging was therefore a patent-
2  ineligible abstract idea, and allowing a patent on it "would pre-empt use of this approach in
3  all fields, and would effectively grant a monopoly over an abstract idea." *Id*. at 612.

4       The Supreme Court also considered similar claims in *Alice*.  The claims at issue in
5  that case recited a method of exchanging financial obligations between two parties using a
6  third-party intermediary to mitigate settlement risk.  134 S. Ct. at 2356.  The intermediary
7  would create and update "shadow" records to reflect the value of each party's accounts
8  held at "exchange institutions," and permit only those transactions for which the parties
9  had sufficient resources.  *Id.*  At the end of each day, the intermediary would then issue
10 irrevocable instructions to the exchange institutions to carry out the permitted transactions.
11 *Id*.  The Court found the claims were "drawn to the concept of . . . the use of a third party
12 to mitigate settlement risk" – a "fundamental economic practice long prevalent in our
13 system of commerce" and, like the hedging in *Bilski*, abstract.  *Id.* at 2356 (citation
14 omitted).

15       The claims at issue in this case fall under the logic of *Bilski* and *Alice*.  Their core
16 idea is determining when a favorable vehicle sales opportunity exists by performing
17 calculations on potential loan or lease payments.  This, like the claims in *Bilski* and *Alice*,
18 reflects a "fundamental economic practice long prevalent in our system of commerce."
19 (*See* SUF ¶¶ 15-16, 38-39.)  Accordingly, those cases support Autobase's contention that
20 the patents embrace the abstract subject matter of providing vehicle sales opportunities
21 based on loan or lease payments. *See Dealersocket, Inc., Petitioner*, No. CBM2014-
22 00132, 2014 WL 5511487, at *8 (PTAB Oct. 29, 2014) ("We are persuaded that, similar to
23 the concept of intermediated settlement in *Alice* and the concept of risk hedging in *Bilski*,
24 the concept at issue here – providing sales opportunities based on loan or lease payments –
25 is "a fundamental economic practice long prevalent in our system of commerce" and
26 "squarely within the realm of abstract ideas."); *see also Bancorp Servs. LLC v. Sun Life*
27 *Assurance Co. of Can.*, 687 F.3d 1266, 1280 (Fed. Cir. 2012) (finding the concept of
28

1  "managing a stable value protected life insurance policy by performing calculations and
2  manipulating the results" abstract); *Accenture Global Servs., GmbH v. Guidewire*
3  *Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013) (finding the concept of "generating
4  tasks based on rules to be completed upon the occurrence of an event" abstract).

5       AutoAlert seeks to avoid this result because of what it labels "specific
6  implementations of computer systems" going beyond this fundamental economic practice.
7  (Opp. at 19.) For instance, AutoAlert argues that the claimed computer system permits the
8  user to "ascertain the point in time during a lease or loan that a customer first becomes a
9  promising candidate to trade their existing vehicle and buy or lease a new one," "provide
10 sales leads in a timely manner," and "determine as early as possible . . . when a favorable
11 opportunity for a [sale] exists." (Opp. at 11, 21, 19.)

12      This argument is unpersuasive, however, because the specific limitations AutoAlert
13 describes in its Opposition appear nowhere in the claims, which recite only a generic
14 computer. *See Dealersocket, Inc., Petitioner*, 2014 WL 5511487 at *8 ("The only
15 technological feature recited in claim 1 is a generic computer. . . . Although certain recited
16 method steps . . . allegedly involve software and hardware functionality, the '461 patent
17 does not purport that those steps are implemented by some new advancement in computer
18 technology or programming techniques. Rather, claim 1 recites merely a generic computer
19 system to perform those method steps."). *Alice* squarely forecloses the use of a generic
20 computer to lift an otherwise abstract claim to safety:

21
22     We conclude that the method claims, which merely require generic computer
    implementation, fail to transform that abstract idea into a patent eligible
23     invention…. [Our precedent demonstrates] that the mere recitation of a
    generic computer cannot transform a patent ineligible abstract idea into a
24     patent-eligible invention.... Thus, if a patent's recitation of a computer
25     amounts to a mere instruction to "implemen[t]" an abstract idea "on . . . a
26     computer," that addition cannot impart patent eligibility.

27
28 134 S. Ct. at 2357-58. *See also Bancorp*, 687 F.3d at 1278 ("To salvage an otherwise

9

1 patent-ineligible process, a computer must be integral to the claimed invention, *facilitating*
2 *the process in a way that a person making calculations or computations could not*.")
3 (emphasis added).
4      Accordingly, the Court finds AutoAlert's claims are drawn to an abstract, and
5 therefore patent-ineligible, concept.

### 2. <u>Inventive Concept</u>

     The Court next considers whether the claims contain an "'inventive concept' – *i.e.*, an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 134 S. Ct. at 2355 (alteration in original) (quoting *Mayo*, 132 S. Ct. at 1294). This inventive concept ensures "that the [claim] is more than a drafting effort designed to monopolize the [abstract idea]." *Mayo*, 132 S. Ct. at 1297. Thus, an inventive concept requires that the claim do "more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" *Id.* at 1294.

     AutoAlert argues its claims contain such an inventive concept because they describe the "iterative" – or repeated – retrieval of information to timely identify favorable opportunities as they occur. (Opp. at 3-4, 20-23.) AutoAlert admits that prior to the issuance of its patents, an auto dealer might have "gather[ed] the necessary information a single time and perform[ed] the calculations required by the claims at a single, pre-determined point in time relative to the end of a lease or loan agreement." (Id. at 22.) But AutoAlert argues that the auto dealer could not have "iteratively retriev[ed] current information for a customer to repeatedly check again whether, on a new day, that customer might now be a strong candidate for a new vehicle" or "manually ascertain[ed] the point in time during a lease or loan that a former customer would first become a promising candidate." (Id. at 22, 6.)

     This argument fails for numerous reasons. First, once again, the instant claim contains no hint of the characteristics AutoAlert seeks to impute. Claim 1 of the '461

1 Patent plainly calls for the performance of a single calculation after retrieving two sets of
2 data.  While there is no doubt that the claim *could* be used to retrieve information on an
3 iterative basis, the claim does not require it, and the Court must not read limitations into
4 the claim that do not exist.

5   Moreover, even assuming *arguendo* that the claim *did* call for the iterative retrieval
6 of customer information, that *still* would not constitute an inventive concept within the
7 meaning of *Mayo*.  This is because, as noted above, the simple retrieval of customer data is
8 not, without more, patent-eligible.  *See CyberSource*, 654 F.3d at 1370 ("Mere data-
9 gathering steps cannot make an otherwise nonstatutory claim statutory.").  Using a
10 computer to repeatedly retrieve customer data, as *Alice* makes clear, does not change that
11 result.  134 S. Ct. at 2357-58.  Rather, "to salvage an otherwise patent-ineligible process,
12 the computer must be integral to the claimed invention, facilitating the process in a way
13 that a person making calculations or computations could not."  *Bancorp*, 687 F.3d at 1278.
14 AutoAlert argues that the recited computer is integral to its claim because "[n]o salesman
15 had performed the iterative retrieval of updated information recited in the claims."  (Opp.
16 at 16.)  AutoAlert does not seriously debate that salespersons previously retrieved
17 customer data on a non-iterative basis, however, and cannot overcome *Alice*'s clear
18 teaching that computerizing this process and repeating it *ad infinitum* does not render it
19 patent-eligible.  *Cf. Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-CV-655,
20 2014 WL 4364848, at *10 (E.D. Tex. Sept. 3, 2014) ("The fact that an invention consists
21 of simple calculations that can readily be performed by humans is a factor that has
22 frequently been held to be indicative of unpatentability. . . .  Adding a computer to perform
23 those mental steps 'does not transform a patent-ineligible claim into a patent-eligible
24 one.'") (Bryson, J.) (citations omitted).  Nor does the computer become integral to the
25 process, as AutoAlert suggested at oral argument, because the process would be cost-
26 prohibitive if performed by humans.  *See SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d
27 1319, 1333 (Fed. Cir. 2010) ("The simple use of computers to make a . . . technique or
28

method more efficient or commercially viable is not relevant in deciding patent-eligibility . . . .").

For the foregoing reasons, the Court finds Claim 1 of the '461 Patent abstract and lacking in an inventive concept that would keep it within the ambit of Section 101. AutoAlert admits that the independent claims of all five patents in suit "share the same structure as Claim 1 of the '461 Patent." (Opp. at 5.) Accordingly, summary judgment is GRANTED as to the asserted independent claims.[3]

### B. Dependent Claims

AutoAlert finally argues that the various asserted dependent claims "add limitations that further remove [the claims] from the realm of the abstract." (Opp. at 18.) The Court analyzes this argument using the categories proposed by Autobase in its Motion and adopted by AutoAlert in its Opposition. (Mem. at 23-24; Opp. at 23-24.) They are as follows:

| 1. Performing multiple calculations [periodically] regarding multiple customers / Retrieving / accessing changed information for a plurality of customers | '099 patent – claims 2-3 and 19<br>'752 patent – claims 7 and 15<br>'529 patent – claim 12<br>'461 patent – claim 9<br>'791 patent – claim 7 |
|---|---|
| 2. Retrieving/accessing the changed information as a batch process | '099 patent – claim 20<br>'752 patent – claims 8 and 16<br>'529 patent – claim 13<br>'461 patent – claim 10 |

---

[3] It is well established that the Court may render decisions based on representative claims where the asserted claims are too numerous to examine individually. *See, e.g., Mayo*, 132 S. Ct. at 1295 ("Like the Federal Circuit we take as typical claim 1 of the '623 Patent . . . . For present purposes we may assume that the other claims in the patents do not differ significantly from claim 1."); *Bilski*, 130 S. Ct. at 3223 (deciding the issue based primarily on two "key claims").

12

| | |
|---|---|
| 3. Generating an alert and transmitting it for each [newly-identified] customer for which a deal is favorable | '099 patent – claims 2-3 |
| 4. Setting the preset acceptable threshold value to zero / defining favorable terms/the condition as ones where the customer would pay no more than he pays now / determining if the customer would pay no more under the second financial terms | '099 patent – claims 6, 11 and 16<br>'752 patent – claims 4 and 12<br>'529 patent – claim 3<br>'461 patent – claim 3<br>'791 patent – claim 3 |
| 5. Defining favorable terms as ones where a customer would pay no more than a threshold value more than he pays now | '099 patent – claims 12 and 17<br>'752 patent – claims 5 and 13 |
| 6. Configuring the alert/message to be read by a [dealer] terminal configured to manage the alert including assigning the alert to a user, associating a task, and/or assigning a status | '099 patent – claims 10 and 15<br>'752 patent – claims 3 and 11<br>'529 patent – claim 4<br>'461 patent – claim 4<br>'791 patent – claim 4 |
| 7. Where the user is a dealer | '529 patent – claim 14<br>'461 patent – claim 11 |
| 8. Where the comparison criteria are payments | '529 patent – claim 16 |
| 9. Where the message is an alert | '529 patent – claim 19<br>'461 patent – claim 15 |

After reviewing the dependent claims, the Court agrees with Autobase that none is meaningfully limited in scope as compared to the independent claims. The Category 1 claims, for instance, call for the process to run simultaneously for multiple customers. (Opp. at 23.) AutoAlert argues this limitation is meaningful because the process "could not be done manually across a large customer database." (Id.) This contention is misguided. The process could be repeated manually for a large number of customers using a pen and paper; it just could not be done economically. Thus, this limitation does not

save these claims. *See SiRF Tech*, 601 F.3d at 1333 ("The simple use of computers to make a . . . technique or method more efficient or commercially viable is not relevant in deciding patent-eligibility.) The claims in Category 2, which call for gathering data via a batch process, fail for the same reason. *Id.*

The claims in Categories 4-5 permit the system's operator to set the parameters by which the system will determine when a deal is favorable.[4] AutoAlert argues this "further limit[s] the specific application of the core concept of providing vehicle sales opportunities." (Opp. at 24.) Generically permitting the operator to determine what is "favorable," however, does nothing to narrow the scope of the asserted claims.

The claims in Category 6 permit the system's operator to manage a generated alert in various ways. As Autobase notes, however, none are different than what could be accomplished with pen and paper. (Mem. at 25.) While AutoAlert argues that these claims limit the application of the core concept by "tying the features of the message to a computer terminal" (Opp. at 24), binding precedent squarely forecloses saving claims through this type of computer implementation. *See Accenture*, 728 F.3d at 1345 ("[T]he complexity of the implementing software or the level of detail in the specification does not transform a claim reciting only an abstract concept into a patent-eligible system or method.").

Finally, Categories 7-9 simply provide definitions for various terms in the patent rather than altering its method or system in any meaningful way. Accordingly, they fail for the same reasons as the independent claims.

Because the Court finds the dependent claims do not meaningfully limit the independent claims already found to be patent-ineligible, summary judgment is GRANTED as to the asserted dependent claims.

---

[4] AutoAlert does not contest Category 3 in its Opposition.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion for Summary Judgment of Invalidity under 35 U.S.C. § 101.  Autobase shall submit a proposed judgment forthwith.

DATED:  December 23, 2014   _____
JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE

15